IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| GYB INVESTORS, LLC | § | |
| | § | |
| | § | |
| *Plaintiff*, | § | |
| vs. | § | CIVIL ACTION NO. _____ |
| | § | |
| | § | JURY TRIAL DEMANDED |
| RIGID GLOBAL BUILDINGS, LLC, RIGID | § | |
| STRUCTURES, LLC, MISSION | § | |
| CONTRACTORS, INC., and INVENTURE | § | |
| DESIGN, LLC | § | |
| | § | |
| | § | |
| *Defendants*. | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff GYB Investors, LLC ("GYB") brings this action for copyright infringement and violation of the Digital Millennium Copyright Act ("DMCA") against Defendants Rigid Global Buildings, LLC, Rigid Structures, LLC, Mission Constructors, Inc., and Inventure Design, LLC (collectively "Defendants") and in support would show the following:

## PARTIES

1.      GYB is a limited liability corporation organized and existing under the laws of the State of Texas and has its principal place of business at 715 N. Holiday Drive North, Galveston, Texas 77550.

2.      Defendant Rigid Global Buildings LLC ("Rigid Global") is a domestic limited liability corporation doing business in the State of Texas and may receive service of process by serving its registered agent, Alireza Ghodsi, at 18933 Aldine Westfield, Houston, Texas 77073 or wherever he may be found.

3.      Rigid Structures, LLC ("Rigid Structures") is a domestic limited liability corporation doing business in the State of Texas and may receive service of process by serving

its registered agent, Alireza Ghodsi, at 18933 Aldine Westfield, Houston, Texas 77073, or wherever he may be found.

4.     Defendant, Mission Constructors, Inc. ("Mission") is a domestic corporation doing business in the State of Texas and may receive service of process by serving its registered agent, Donald M. Woo, at 3813 Buffalo Speedway, Suite 100, Houston, Texas 77098 or wherever he may be found.

5.     Defendant Inventure Design, LLC ("Inventure Design") is a domestic limited liability corporation doing business in the State of Texas and may receive service of process by serving its registered agent, James W. O'Neill Jr, at 9 Greenway Plaza, Suite 3000, Houston, Texas 77046 or wherever he may be found.

## JURISDICTION AND VENUE

6.     GYB files this action against Defendants for copyright infringement under the Copyright Act, 17 U.S.C. §§ 101 et. seq.  Accordingly, this Court has exclusive subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1338(a) (copyright jurisdiction), and 28 U.S.C. § 1331 (federal question jurisdiction).

7.     This Court has personal jurisdiction over Defendants because they conduct business in this judicial district, and committed the copyright infringement upon which this action is based in this judicial district.

8.     Pursuant to 28 U.S.C. §§ 1391(b)(2) and 1400(a), venue is proper in the Southern District of Texas (Galveston Division) because Defendants' agents reside and/or can be found in the Southern District of Texas and because the acts of infringement occurred in this district.

## FACTUAL ALLEGATIONS

9.     GYB is the owner of the real property located at 715 N. Holiday Drive North, Galveston, Texas 77550 (the "Property") which is the site for a marina known as the Galveston

Yacht Basin.  The Galveston Yacht Basin has long been a fixture on Galveston Island for boating and sport fishing enthusiasts and has hosted countless social events in its long history.  Hurricane Ike seriously damaged the facility on the Property in September 2008, including a well-publicized fire in its dry stack storage warehouse that occurred just before landfall of the hurricane.  Because of the fire, the facility and the boats therein were a total loss.

10.     GYB acquired the Property in 2011 to redevelop it, including plans to reconstruct the dry stack.  To this end, GYB desired to have a new Dry Stack Boat Storage Warehouse ("Dry Stack") constructed at the Property.  The Dry Stack was to include a metal building that housed an adjustable rack system ("Adjustable Boat Rack") for dry boat storage.  This Adjustable Boat Rack was critical to maximize the capacity of the Dry Stack and facilitate the storage of vessels or boats of various sizes and configurations.

11.     On or about May 3, 2012, GYB entered into an agreement with Roof & Rack Products, Inc. ("Roof & Rack") to provide necessary structural drawings for the construction of the Dry Stack.  *See* Agreement between Roof & Rack and GYB, attached hereto as Exhibit "A." Further, the parties agreed that GYB's use of the structural drawings was conditioned upon its use of Roof & Rack to fabricate and erect the Dry Stack.  *See id.*  The agreement further stipulated that "any foot layout plans, building detail and connection designs, drawings, renderings, elevation sketches, engineering designs and/or specifications are confidential and, proprietary, and represent Roof & Rack's investment in engineering skill and development and remain the property of Roof & Rack."  *See id.*  Finally, the agreement clearly states, "[GYB] understand[s] and agrees that for any reason they should not elect not to use Roof & Rack Products, Inc. to fabricate and erect the structures being designed and engineered, [GYB] will not use the design that is the same, similar to, or moderately different than the one that is being engineered by Roof & Rack Products, Inc." *See id.*

3

12.     Pursuant to its contract with GYB, Roof & Rack engineered and designed technical drawings of the Dry Stack and Adjustable Boat Rack which included detailed drawings of various design elements including (1) the design information, (2) the foot layout, (3) anchor bolt layout, (4) framing details (sidewalls and endwalls), (5) elevations, (6) bunker beam layout, (7) roof layout, (8) skylight layout, and (9) other design elements (hereinafter referred to as "Copyrighted Works").  Roof & Rack was the original author and sole owner of the Copyrighted Works and owned the copyrights that protected these drawings.

13.     On June 4, 2012, GYB entered into a contract ("Architectural Agreement") with Inventure Design to provide architectural design services in support of GYB's planned reconstruction of the Property, including the Dry Stack and Adjustable Boat Rack.  *See* Architectural Agreement, attached hereto as Exhibit "B."  As part of the effort to obtain initial approval for construction, Inventure Design submitted the Copyrighted Works for permit approval to the City of Galveston.  On December 6, 2012, the City of Galveston permitted construction of the Dry Stack based in part on the Copyrighted Works.

14.     On or about December 28, 2012, GYB entered into agreement with Mission to serve as general contractor in the reconstruction of the Property, including the Dry Stack and Adjustable Boat Rack ("General Contractor Agreement").  *See* Mission General Contract Agreement, attached hereto as Exhibit "C."

15.     GYB had originally intended to have Roof & Rack construct the Dry Stack as subcontractor to Mission.  However, Roof & Rack, Mission and GYB were unable to come to agreeable terms for Roof & Rack to construct the Dry Stack.  As a result, Roof & Rack's services with respect to the project ended before construction of the Dry Stack commenced.  At that point, Roof & Rack instructed Mission that it was not to use the Copyrighted Works in any

4

fashion, including with respect to any Dry Stack that was subsequently constructed on the Property.

16.     Thereafter, on or about January 18, 2013, Mission entered into a subcontract with Rigid Global and Rigid Structures (collectively "Rigid") to design and construct the Dry Stack and Adjustable Boat Rack.  *See* Rigid Sub-Contract, attached hereto as Exhibit "D."  Despite Roof & Rack's prior admonition, Mission reproduced and distributed the Copyrighted Works to Rigid for use in designing and constructing the Dry Stack and Adjustable Boat Rack, as evidenced by its attachment as Exhibit C to the Rigid Sub-Contract.  *See id.*

17.     On or about January 28, 2013, Rigid submitted to Mission, a contract that included specific detail related to the design and construction of the Dry Stack.  *See* Rigid's Quotation and Contract, attached hereto as Exhibit "E."  In the "Drawings Requirement" section of the form contract, Rigid represents that it already possessed "2 Sets of Permit Drawings," which "Ben Gray will hand carry" for delivery to Mission.  *See id.*  Also notable, Rigid does not represent that it will submit draft drawings for Mission's approval.  *See id.*

18.     On or about February 11, 2013, Rigid submitted its permit drawings to Mission for submission to the City of Galveston to obtain permits for construction of the Dry Stack.  On or about February 13, 2013, Inventure Design submitted Rigid's drawings to the City of Galveston for permit approval.  The City of Galveston approved the permit.

19.     On or about February 2013, Defendants commenced construction of the Dry Stack.

20.     On May 23, 2013, Roof & Rack registered the Copyrighted Works as technical drawings with the United States Copyright Office, Registration Number VA 1-864-674.  *See* Certificate of Registration, attached hereto as Exhibit "F."

21.     On or about July 17-18, 2013, representatives of Mission and GYB executed the Certificate of Substantial Completion of the Dry Stack.

*INFRINGING WORKS*

22.     This section of this pleading, titled "Infringing Works" summarizes and describes subject works which infringe the Copyrighted Works, including but not limited to the copied and derivative design drawings, and the construction of the Dry Stack and Adjustable Boat Rack, which are sometimes referred to herein collectively as the "Infringing Works."  Because the infringement is evident from a cursory review (as a lay observer) of the subject drawings and plans, GYB submits drawings for certain design elements in support of this action.

23.     Without authorization from GYB or Roof & Rack, Defendants blatantly copied portions of the Copyrighted Works.  As shown below, Defendants copied the following key portions of the Copyrighted Works for incorporation into its own purported "original" drawings created and used to construct the Dry Stack: (1) the design information, (2) the foot layout, (3) anchor bolt layout, (4) framing details (sidewalls and endwalls), (5) elevations, (6) bunker beam layout, (7) roof layout, (8) skylight layout, and (9) other design elements.

**General Design Notes**

24.     Two sections on the first page of Roof & Rack's plans are the technical requirements titled: (a) General Design Notes, and (b) Design Information on Boat Loads.  Roof & Rack designed and drafted these technical requirements.  The section "General Design Notes" on Roof & Rack's plans is identical to the section titled "General Design Loads" on Rigid's drawings.  *Compare* Rigid's Drawing, titled "Drawing Package," attached hereto as Exhibit "G-1," *with* Roof & Rack Drawing, Sheet 1, attached hereto as Exhibit "G-2."  In this instance, it is obvious that Rigid simply copied and pasted Roof & Rack's design notes into its own plans for the Dry Stack.  Roof & Rack's "General Design Notes" section is identical, word for word, to the

6

section in Rigid's plans entitled "General Design Load."  *See id.*  As further evidence of Rigid's copy and paste job, Roof & Rack's name actually appears in Rigid's design notes in paragraph 10.  *See* Exhibit G-1.

25.     Rigid also copied Roof & Rack's Design Information on Boat Loads.  This information is based on the specific needs of a facility, and determines the remaining features for the different size, weight and types of boats.  A designer uses this information to create the foot layout, the number of levels, and the loads for each level.  Roof & Rack engineered, designed and drafted this information.  The section "Design Information" on Roof & Rack's plans is identical to the information in the section labeled "Other Loads/Requirements," in Rigid's plans. *Compare* Exhibit G-1, *to* Exhibit G-2.  Accordingly, any lay observer may conclude from a comparison of Rigid's and Roof & Rack's design plans for the Dry Stack, that Rigid copied Roof & Rack's design notes.

**Foot Layout**

26.     The Foot Layout is the arrangement of rows and columns for the Dry Stack.  Roof & Rack's design presented the Foot Layout on its own sheet.  *See* Exhibit G-3.   Rigid's plans presented the Foot Layout on the same sheet as the Anchor Bolt Layout.  *See* Exhibit G-4.  Any lay observer can see that these foot layout plans are identical.  In addition, the measurements for the space between the rows and columns are also identical, as shown in the table below:

|  | Roof & Rack | Rigid |
|---|---|---|
| **Horizontal** |  |  |
| A-B | 15' | 13'-9"+1'-3"=15' |
| B-C | 12' | 12' |
| C-D | 20'-6" | 20'-6" |
| D-E | 30' | 30' |
| E-F | 20'-6" | 20'-6" |
| F-G | 15' | 15' |
| G-H | 15' | 15' |
| H-G1 | 22' | 22' |
| G1-F1 | 15' | 15' |
| F1-E1 | 26'-6" | 26'-6" |
| E1-D1 | 30' | 30' |

| | | |
|---|---|---|
| D1-C1 | 26'-6" | 26'-6" |
| C1-B1 | 15' | 15' |
| B1-A1 | 20' | 18'-9"+1'-3"=20' |
| **Vertical** | | |
| 1-2 | 28'-3" | 27'-9"+0.6"=28'-3" |
| 2-3 | 25'-8" | 25'-8" |
| 3-4 | 34'-8" | 34'-8" |
| 4-5 | 34'-8" | 34'-8" |
| 5-6 | 25'-8" | 25'-8" |
| 6-7 | 25-8" | 25-8" |
| 7-8 | 28'-3" | 27'-9"+0.6"=28'-3" |

*See* Exhibits G-3 and G-4.

**Anchor Bolts**

27.     Anchor Bolts attach the structure to the ground and maintain its stability, and an anchor bolt plan identifies the location for the anchor bolts.  From the anchor bolt plan itself, a builder has a firm idea of how the facility will be constructed.  Rigid's anchor bolt layout design drawings are identical to Roof & Rack's drawings.  *Compare* Rigid's anchor bolt layout drawings, attached hereto as Exhibit "G-5," with Roof & Rack's anchor bolt layout drawings, attached hereto as Exhibit "G-6."  One anchor bold setting from each plan is illustrated below — Roof & Rack's on the right, and Rigid's on the left.



*See* Exhibit G-6 and, Rigid's anchor bolt details attached hereto as Exhibit G-7.

28.     The location and measurements of the anchor bolts are identical in both.  *See id.* Specifically, the plans are identical with respect to the number of bolts, the hole size, and base

plate thickness.  The table below compares and illustrates the anchor bolt settings for both plans:

|  | Roof & Rack | Rigid |
|---|---|---|
| Anchor Bolt | Base PL A, A1 | Detail A, A1 |
| No. Bolts | 6 | 6 |
| Hole Diameter | 1 1/2 | 1 1/2 |
| Plate Thickness | 1" | 1" |
| Anchor Bolt | Base PL B | Detail B |
| No. Bolts | 4 | 4 |
| Hole Diameter | 1' 3/8" | 1' 3/8" |
| Plate Thickness | 3/4" | 3/4" |
| Anchor Bolt | Base PL C | Detail C |
| No. Bolts | 4 | 4 |
| Hole Diameter | 1' 1/2" | 1' 1/2" |
| Plate Thickness | 1" | 1" |
| Anchor Bolt | Base PL D | Detail D |
| Anchor Bolt | Base PL D | Detail D |
| No. Bolts | 6 | 6 |
| Hole Diameter | 1' 1/2" | 1' 1/2" |
| Plate Thickness | 1' 1/4" | 1' 1/4" |
| Anchor Bolt | Base PL E | Detail E |
| No. Bolts | 4 | 4 |
| Hole Diameter | 1' 1/4" | 1' 1/4" |
| Plate Thickness | 3/4" | 3/4" |
| Anchor Bolt | Base PL F, F1 | Detail F, F1 |
| No. Bolts | 6 | 6 |
| Hole Diameter | 1' 1/4" | 1' 1/4" |
| Plate Thickness | 3/4" | 3/4" |
| Anchor Bolt | Base PL G, G1 | Detail G, G1 |
| No. Bolts | 8 | 8 |
| Hole Diameter | 1' 1/2" | 1' 1/2" |
| Plate Thickness | 1' 1/4" | 1' 1/4" |

*See* Exhibits G-6 and G-7.

29.     In addition to copying the anchor bolt settings, the Dry Stack was constructed with Roof & Rack's anchor bolt plan.  The table below compares and illustrates the distance between the anchor bolts, both vertically and horizontally, as presented in Roof & Rack's and Rigid's plans:

|  | Roof & Rack | Rigid |
|---|---|---|
| **Horizontal** | | |
| A-B | 13'-9" | 13'-9" |
| B-C | 12' | 12' |
| C-D | 20'-6" | 20'-6" |
| D-E | 30' | 30' |
| E-F | 20'-6" | 20'-6" |
| F-G | 15' | 15' |
| G-H | 15' | 15' |
| H-G1 | 22' | 22' |
| G1-F1 | 15' | 15' |
| F1-E1 | 26'-6" | 26'-6" |
| E1-D1 | 30' | 30' |
| D1-C1 | 26'-6" | 26'-6" |
| C1-B1 | 15' | 15' |
| B1-A1 | 18'-9" | 18'-9" |
| **Vertical** | | |
| **Vertical** | | |
| 1-2 | 27'-9" | 27'-9" |
| 2-3 | 25'-8" | 25'-8" |
| 3-4 | 34'-8" | 34'-8" |
| 4-5 | 34'-8" | 34'-8" |
| 5-6 | 25'-8" | 25'-8" |
| 6-7 | 25-8" | 25-8" |
| 7-8 | 27'-9" | 27'-9" |

*See* Exhibits G-4 and G-5.

30.     In addition, upon information and belief, on January 25, 2013, Ben Gray, a sales manager with Rigid, emailed Nathan Schulte, another Rigid employee, in which Mr. Gray confirms that Rigid's "anchor bolt drawings were NOT going to change from the drawings they have from the other supplier." Roof & Rack is the only other company that produced anchor bolt drawings for the Dry Stack.

**Sidewall and Endwall Frame**

31.     Side walls are the non-gabled walls of the facility without any entrance. Rigid's sidewall framing design for the Dry Stack is identical to Roof & Rack's design, including the layout and measurements. *Compare* Rigid's sidewall framing, attached hereto as Exhibit G-8, with Roof & Rack's sidewall framing, attached hereto as Exhibit G-9.

10

32.     End walls are the gabled ends of the facility.  One end wall has one entrance, while the other end wall has two.  Rigid's endwall framing design, for the wall with two entrances, is identical to Roof & Rack's design, including both layout plan and measurements. *Compare* Rigid's endwall framing (one entrance), attached hereto as Exhibit G-10, with Roof & Rack's endwall framing (one entrance), attached hereto as Exhibit G-11.  Specifically, the following measurements are identical: (a) distance between columns, (b) the height of doors, and (c) the width of doors.  The table below compares and illustrates the substantial similarities between the two plans:

|  | Roof & Rack | Rigid |
|---|---|---|
| **Horizontal** | | |
| A-B | 15' | 13'-9"+1'-3"=15' |
| B-C | 12' | 12' |
| C-D | 20'-6" | 20'-6" |
| D-E | 30' | 30' |
| E-F | 20'-6" | 20'-6" |
| F-G | 15' | 15' |
| G-H | 15' | 15' |
| H-G1 | 22' | 22' |
| G1-F1 | 15' | 15' |
| F1-E1 | 26'-6" | 26'-6" |
| E1-D1 | 30' | 30' |
| D1-C1 | 26'-6" | 26'-6" |
| C1-B1 | 15' | 15' |
| B1-A1 | 20' | 18'-9"+1'-3"=20' |
| The height of each door | 40'-7" | 40'-7" |

*See* Exhibits G-10 and G-11.

33.     Similarly, Rigid's endwall framing design for the wall with one entrance is identical to Roof & Rack's design, including both layout plan and measurements *Compare* Rigid's endwall framing (two entrances), attached hereto as Exhibit G-12, with Roof & Rack's endwall framing (two entrances), attached hereto as Exhibit G-13.   The table below compares and illustrates the substantial similarities between the two plans:

|  | Roof & Rack | Rigid |
|---|---|---|
| **Horizontal** | | |
| A-B | 15' | 13'-9"+1'-3"=15' |
| B-C | 12' | 12' |
| C-D | 20'-6" | 20'-6" |
| D-E | 30' | 30' |
| E-F | 20'-6" | 20'-6" |
| F-G | 15' | 15' |
| G-H | 15' | 15' |
| H-G1 | 22' | 22' |
| G1-F1 | 15' | 15' |
| F1-E1 | 26'-6" | 26'-6" |
| E1-D1 | 30' | 30' |
| D1-C1 | 26'-6" | 26'-6" |
| C1-B1 | 15' | 15' |
| B1-A1 | 20' | 18'-9"+1'-3"=20' |
| The height of each door | 40'-7" | 40'-7" |

*See* Exhibits G-12 and G-13.

### Elevation Designs

34.     A frame/framing elevation is a view of the building seen from one side.  In this instance, for the Dry Stack, Rigid's frame elevation design is identical to Roof & Rack's, including the measurements.  *Compare* Rigid's elevation designs, attached hereto as Exhibits G-14 thru 16 with Roof & Rack's elevation designs, attached hereto as Exhibit G-17 and 18. It is obvious to a lay observer that the length of each column is identical in both plans.  The table below compares and illustrates the substantial similarities between the two plans:

|  | Roof & Rack | Rigid |
|---|---|---|
| **Horizontal** | | |
| A-B | 15' | 15' |
| B-C | 12' | 12' |
| C-D | 20'-6" | 20'-6" |
| C-F | 71' | 71' |
| D-E | 30' | 30' |
| E-F | 20'-6" | 20'-6" |
| F-G | 15' | 15' |
| G-H | 15' | 15' |
| H-G1 | 22' | 22' |
| G1-F1 | 15' | 15' |
| F1-C1 | 83' | 83' |
| F1-E1 | 26'-6" | 26'-6" |
| E1-D1 | 30' | 30' |
| D1-C1 | 26'-6" | 26'-6" |

| C1-B1 | 15' | 15' |
|---|---|---|
| B1-A1 | 20' | 20' |
| Height of Bays from Bottom to top | | |
| | 10' | 10' |
| | 10' | 10' |
| | 10' | 10' |
| | 9' | 9' |
| | 10' | 10' |

*See* Exhibits G-14 thru G-18.

### Bunker Beam Layout

35.     Bunker beams in a dry stack facility are the horizontal steel members in which wood supports are attached to, and the boat is placed on in each bay on each level.  Roof & Rack's plans presented its bunker beam layout with all four levels on one sheet, while Rigid presented its layout with each level on a separate sheet.  *Compare* Rigid's bunker beam layout, attached hereto as Exhibit G-19, with Roof & Rack's bunker beam layout, attached hereto as Exhibit G-20.  Regardless of presentation, the layout and measurements for the bunker beams are identical.  The table below compares and illustrates the substantial similarities between the two plans:

| | Roof & Rack | Rigid |
|---|---|---|
| **Horizontal** | | |
| A-B | 15' | 13'-9"+1'-3"=15' |
| B-C | 12' | 12' |
| C-D | 20'-6" | 20'-6" |
| D-E | 30' | 30' |
| E-F | 20'-6" | 20'-6" |
| F-G | 15' | 15' |
| G-H | 15' | 15' |
| H-G1 | 22' | 22' |
| G1-F1 | 15' | 15' |
| F1-E1 | 26'-6" | 26'-6" |
| E1-D1 | 30' | 30' |
| D1-C1 | 26'-6" | 26'-6" |
| C1-B1 | 15' | 15' |
| B1-A1 | 20' | 18'-9"+1'-3"=20' |
| **Vertical** | | |
| 1-2 | 28'-3" | 27'-9"+0.6"=28'-3" |
| 2-3 | 25'-8" | 25'-8" |
| 3-4 | 34'-8" | 34'-8" |
| 4-5 | 34'-8" | 34'-8" |
| 5-6 | 25'-8" | 25'-8" |
| 6-7 | 25-8" | 25-8" |
| 7-8 | 28'-3" | 27'-9"+0.6"=28'-3" |

*See* Exhibits G-19 and 20.

13

**Roof Layout**

36.     The Roof Framing layout and design in the Dry Stack based on Rigid's plans are identical to Roof & Rack's design plans.  *Compare* Rigid's roof framing, attached hereto as Exhibit G-21, with Roof & Rack's roof framing, attached hereto as Exhibit G-22.  While Rigid's plans contain some different structural elements such as purlins and different cross-bracings, the design elements remain identical.  More specifically, the number of cross-bracings on the roof and the sidewalls are identical.  There are six (6) rows of cross-bracings on the roof.  The middle row of both roof framings does not have cross-bracings.  The sidewalls on which the roof lays have seven (7) corresponding columns to each row on the roof.  There are cross-bracings on all seven (7) columns of each sidewall.

**Skylight Layout Plans**

37.     Upon information and belief, on April 2, 2013, Ben Gray, a sales manager with Rigid, emailed David Glenz, a Project Manager with Mission, Roof & Rack's and Rigid's skylight layout plans.  Mr. Gray compares the drawings and instructs Mr. Glenz to review both drawings and advise as to any changes.  A side-by-side comparison shows that Rigid's final drawings are almost a duplicate copy of Roof & Rack's original design.  *Compare* Rigid's skylight layout plans, attached hereto as Exhibit G-23, with Roof & Rack's skylight layout plans, attached hereto as Exhibit G-24.

**Other Design Elements**

38.     Water Relief Fence is a design element that allows the flow of water in case of a storm or flooding.  The Water Relief Fences on the plans used to construct the Dry Stack, and Roof & Rack's design, are shown below – Roof & Rack's on the right, and Rigid's on the left:



*Compare* Rigid's water relief fences, attached hereto as Exhibit G-25, with Roof & Rack's water relief fences, attached hereto as Exhibit G-26.

39.     As shown above, the Water Relief Fence on both plans are identical.   For instance, the fence height on both plans is 15 inches, even though the local code requires only 12 inches.   In addition, the fixed ground stands and adjustable bracket specifications are identical. Finally, the design for the proper placement of boats based on the size of the vessel is identical as well.   *Compare* Rigid's boat placement plans, attached hereto as Exhibit G-27, with Roof & Rack's boat placement plans, attached hereto as Exhibit G-28.

<u>ASSIGNMENT OF THE COPYRIGHTED WORKS</u>

40.     On October 7, 2015, Roof & Rack (and other related parties) executed an Assignment of Copyright Agreement ("Assignment") which expressly assigned its exclusive right in the ownership of this copyright and the accompanying right to sue for any past or, present or future infringements thereof, to GYB.[1]   *See* Assignment of Copyright Agreement, attached hereto as Exhibit "H."  The Assignment expressly grants GYB, among other things, the exclusive right to sue for any past, present of future infringement of the Copyrighted Works.

41.     On or about November 4, 2015, GYB submitted its application to the United States Copyright Office to have the Assignment recorded.

---

[1] The Assignment to GYB resulted from resolution of previous copyright infringement action by Roof & Rack against GYB. *See, e.g.,* Case No. 13-80575-CIV; *Roof & Rack Products, Inc. v. GYB Investors, LLC*; In the United States District Court for the Southern District of Florida.

**DIRECT COPYRIGHT INFRINGEMENT AGAINST RIGID AND MISSION**

42.     GYB incorporates Paragraphs 1 to 35 herein by reference.

43.     Roof & Rack was the exclusive and registered owner of the Copyrighted Works possessing the exclusive rights of a copyright owner provided under 17 U.S.C. § 106.  Roof & Rack assigned these rights to GYB.  *See* Exhibit "H."

44.     By way of the Infringing Works, Rigid and Mission, respectively and/or jointly, have used or instructed others to use, the Copyrighted Works, to create unauthorized copies and/or derivatives of the Copyrighted Works, and/or portions thereof, without Roof & Rack's express approval, thereby violating or otherwise infringing upon Roof & Rack's exclusive rights under 17 U.S.C. § 106.   Roof & Rack have assigned their exclusive rights to sue for this infringement to GYB.  Accordingly, Rigid and Mission are jointly and/or severally liable to GYB for direct copyright infringement.  17 U.S.C. § 501(a).

45.     Rigid and Mission's infringing acts were committed despite being provided notice of exclusive rights and having been instructed not to do improperly use the Copyrighted Works. Upon information and belief, Rigid and Mission's acts of direct copyright infringement were therefore, intentional and willful.

46.     For these reasons, as assignee of Roof & Rack's copyrights, including the right to sue for infringement thereof, GYB seeks an award of:

(a)     actual damages suffered as a result of Rigid and Mission's infringement, and any profits of Rigid and Mission that are attributable to the infringement and not taken into account in computing actual damages, the amounts of which are to be determined at trial; or (b) statutory damages in an amount to be determined at trial to the extent recoverable under the facts of this case. 17 U.S.C. § 504.

47.     Additionally, to the extent recoverable under the facts of this case, GYB seeks an award of its reasonable attorneys' fees and costs incurred in this action for direct copyright infringement, as well as any appeal(s) thereof pursuant to applicable law.  17 U.S.C. § 505.

48.     Additionally, GYB seeks pre- and post-judgment interest on the principal amounts it will recover from this action for direct copyright infringement, as well as any appeal(s) thereof pursuant to applicable law.

## CONTRIBUTORY COPYRIGHT INFRINGEMENT AGAINST MISSION

49.     GYB incorporates Paragraphs 1 to 48 herein by reference.

50.     Roof & Rack was the exclusive and registered copyright owner of the Copyrighted Work; therefore, it possessed the exclusive rights of a copyright owner as provided under 17 U.S.C. § 106.  Roof & Rack assigned these rights to GYB.

51.     As alleged above, Rigid and Mission have directly infringed Roof & Rack's copyrights in and to the Copyrighted Works, and GYB's rights by assignment.

52.     In addition, or alternatively, upon information or belief, Mission knew or should have known of Rigid's infringing conduct, and intentionally and willfully induced or encouraged such infringing conduct.   Accordingly, Mission is liable to GYB for contributory copyright infringement.  17 U.S.C. § 501(a).

53.     For these reasons, as assignee of Roof & Rack's rights in the Copyrighted Works, including the right to sue for infringement thereof, GYB seeks an award of:

(a)     the actual damages suffered by Roof & Rack as a result of Mission's contributory infringement, and any profits of Mission that are attributable to the infringement and not taken into account in computing actual damages, the amounts of which are to be determined at trial; or

(b) statutory damages in an amount to be determined at trial to the extent recoverable under the facts of this case. 17 U.S.C. § 504.

54.     Additionally, to the extent recoverable under the facts of this case, GYB seeks an award of its reasonable attorneys' fees and costs incurred in this action for contributory copyright infringement, as well as any appeal(s) thereof pursuant to applicable law.  17 U.S.C. § 505.

55.     Additionally, GYB seeks pre- and post-judgment interest on the principal amounts it will recover from this action for contributory copyright infringement, as well as any appeal(s) thereof pursuant to applicable law.

**CONTRIBUTORY COPYRIGHT INFRINGEMENT AGAINST INVENTURE DESIGN**

55.     GYB incorporates Paragraphs 1 to 55 herein by reference.

56.     Roof & Rack were the exclusive and registered copyright owners of the Copyrighted Work; therefore, they possessed the exclusive rights of a copyright owner as provided under 17 U.S.C. § 106.  Roof & Rack assigned these rights to GYB.

57.     As alleged above, Rigid and Mission have directly infringed Roof & Rack's copyrights in and to the Copyrighted Work, and GYB's rights by assignment.

58.     In addition, upon information or belief, Inventure Design knew or should have known of Rigid's and Mission's infringing conduct, and materially contributed to such infringing conduct.   Accordingly, Inventure Design is liable to GYB for contributory copyright infringement.  17 U.S.C. § 501(a).

59.     For these reasons, as assignee of Roof & Rack's copyrights, including the right to sue for infringement thereof, GYB seeks an award of:

(a)     the actual damages suffered by Roof & Rack as a result of Inventure Design's contributory infringement, and any profits of Inventure Design that are attributable to the infringement and not taken into account in computing actual damages, the amounts of which are to be determined at trial; or (b) statutory damages in an amount to be determined at trial to the extent recoverable under the facts of this case. 17 U.S.C. § 504.

18

60.     Additionally, to the extent recoverable under the facts of this case, GYB seeks an award of its reasonable attorneys' fees and costs incurred in this action for contributory copyright infringement, as well as any appeal(s) thereof pursuant to applicable law. 17 U.S.C. § 505.

61.     Additionally, GYB seeks pre- and post-judgment interest on the principal amounts it will recover from this action for contributory copyright infringement, as well as any appeal(s) thereof pursuant to applicable law.

### VIOLATIONS OF THE DIGITAL MILLENIUM COPYRIGHT ACT

62.     GYB incorporates Paragraphs 1 to 61 herein by reference.

63.     The Copyrighted Works contained copyright management information as that term is defined in one or more of the following statutory provisions, 17 U.S.C. § 1202(c)(1), (2), (3), and (6).

64.     Defendants distributed copies of drawings for the Dry Stack and Adjustable Boat Rack which contained copyright management information of one or more of Rigid Global, Rigid Structures, Mission Constructors, and Inventure Design; however, such copyright management information did not refer to Roof & Rack  and therefore was false and in violation of 17 U.S.C. § 1202(a).

65.     The activities referred to above were conducted with the intent to enable, facilitate and/or conceal the infringement of Roof & Rack's copyright (GYB via Assignment).

66.     Defendants distributed copies of drawings for the Dry Stack which contained copyright management information of one or more of Rigid Global, Rigid Structures, Mission Constructors, and Inventure Design; but with copyright management information of Roof & Rack  having been removed therefrom in violation of 17 U.S.C. § 1202(b).

67.    The activities referred to above were conducted with the knowledge or with reasonable grounds to know, that such actions would induce, enable, facilitate, or conceal an infringement of Roof & Rack's copyright (GYB via Assignment).

68.    Defendants' conduct was deliberate and willful.

69.    For these reasons, as assignee of Roof & Rack's copyrights, including the right to sue for infringement thereof, GYB seeks an award of:

(a)    actual damages and Defendants' profits attributable to the prohibited conduct pursuant to 17 U.S.C. § 1203(b)(3) and § 1203(c)(1) – (3), or alternatively, statutory damages for each violation to the extent applicable under the facts of the case; and

(b)    reasonable attorneys' fees pursuant to 17 U.S.C. § 1203(b)(5) to the extent applicable under the facts of the case.

## CONDITIONS PRECEDENT

75.    All conditions precedent to GYB's claims have occurred or been performed.

## DEMAND FOR JURY TRIAL

76.    GYB demands a trial by jury.  FED. R. CIV. P. 38(b).

## PRAYER

77.    For these reasons, GYB respectfully asks the Court:

a.  for a judgment in favor of GYB on all counts requested above;

b.  for an award of either actual damages plus profits or statutory damages according to law, as described further above;

c.  for GYB's costs and reasonable attorneys' fees incurred in this action and any appeal(s) thereof according to law;

d.  pre- and post-judgment interest according to law; and

e.  for such other and further relief as the Court may deem just and proper.

Respectfully submitted,

**SHEEHY, WARE & PAPPAS, P.C.**

By:     /s/ R. Edward Perkins
            R. Edward Perkins, Attorney-in-Charge
            Texas State Bar No.15790410
            So. Dist. Adm. No. 8183
            eperkins@sheehyware.com
2500 Two Houston Center
909 Fannin Street
Houston, Texas 77010-1003
713-951-1000 Telephone
713-951-1199 Facsimile

**ATTORNEYS FOR PLAINTIFF
GYB INVESTORS, LLC**

2385217